UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MATTHEW D. CAUDILL                                                                                    PLAINTIFF

v.                                                                        CIVIL ACTION NO. 3:09CV-547-S

UNITED PARCEL SERVICE                                                                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, United Parcel Service ("UPS"), for summary judgment. For the reasons set forth herein, the court finds that no genuine issue of material fact exists and UPS is entitled to judgment as a matter of law.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a

light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In 1991, the plaintiff, Matthew D. Caudill, began working for UPS Co., the airline division of UPS, as a Grade 9 Computer Repair Technician in its Information Systems Service Center ("ISSC"). ISSC was an internal operating group of UPS Co. providing repair services for the company's printers, keyboards, monitors, scanners, DIAD boards and the like. In the mid 1990s, UPS purchased a company called Sonic Air. UPS maintained and operated Sonic Air as a subsidiary. In 1998, UPS made the decision to merge the 300-person ISSC group into the Sonic Air operations. In early 1999, the ISSC employees were informed of the merger decision. They were informed that Sonic Air, an established company with its own employee base, had a different wage structure, benefits plan, and personnel policies. The employees were told that they would initially be transferred to Sonic Air under the UPS Co. structure, but would ultimately become Sonic Air employees. Transfer packages would be formulated for them to facilitate the changes in wages and benefits between the two companies. Caudill admits that he was aware of the differing structure between ISSC and Sonic Air. The merger process took a number of years to complete.

In 1999, the transition began, and the ISSC employees were moved from the ISSC Grade Lane facility to the Sonic Air facility on Outer Loop in Louisville. In 2001, Sonic Air was renamed Service Parts Logistics. The name change occurred before Caudill became a Sonic Air employee. The transition of employees from UPS Co. to the payroll of the new company was to occur automatically, unless a given employees accepted another position within UPS Co. or elsewhere. During the transition period, the ISSC employees were allowed to apply internally for other jobs "on the UPS side." Many employees of the ISSC group applied for and accepted other positions.

Caudill apparently applied for a number of jobs "on the UPS side" also but was unsuccessful in obtaining a position.

In January, 2002, transfer packets were prepared and transition meetings were held for the 57 ISSC group employees who were going to be to transitioned to the SPL system. They were shown a PowerPoint presentation summarizing the transition process. UPS sought to address some of the differences in benefits between UPS Co. and SPL by providing pay adjustments where the value of an eliminated benefit could be reduced to an exact cost and incorporated into the employee's wage. Such adjustments apparently accounted for an increase in pay of $1.40 per hour for Caudill when he became an SPL employee. On April 14, 2002, Caudill's employment was automatically transferred to SPL. He continued to do the same job at the Outer Loop location that he had been performing since the beginning of the transition process in 1999. On April 14, 2002, Caudill was transitioned from a UPS Co. Grade 9 employee earning $18.00 per hour to an SPL Grade 4 employee earning $19.40 per hour. It is undisputed that Caudill was transferred from the UPS Co. payscale to the SPL payscale, and that the pay grades as between the two companies bore no relationship to one another.

The sum and substance of Caudill's claim in this lawsuit is that he was purportedly promised continued treatment as a UPS Co. Grade 9 technician for purposes of his "top out" in pay. Both UPS Co. and SPL awarded raises on a merit system. Both companies had a "top out" point on their respective payscales after which an employee would no longer be eligible to receive the maximum annual merit increases in that position. The "top out" point on UPS Co.'s payscale was higher than on the SPL payscale. Caudill urges that since retirement benefits will be calculated on final high average earnings, SPL's lower "top out" wage would ultimately reduce his retirement benefit. He

contends that he questioned this after the transition presentation in January, 2002, but he did not receive an answer. There was no representation made by UPS in the transfer packets or presentation that employees would continue to be compensated according to their UPS Co. paygrade.

Caudill has proceeded under a promissory estoppel theory in this suit, urging that he detrimentally relied on a promise that he would receive a higher "top out," that he remained at SPL after this promise was made to him, and that this promise should be enforced to avoid injustice. Response (DN 37), pp. 5-6.

Promissory estoppel is a viable legal theory in Kentucky. *McCarthy v. Louisville Cartage Co.,* 796 S.W.2d 10 (Ky.App. 1990). To establish a claim of promissory estoppel there must be (1) a promise; (2) which the promisor should reasonably expect to induce action or forebearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise. *Res-Care, Inc. v. Omega healthcare Investors, Inc.*, 187 F.Supp.2d 714, 718 (W.D.Ky. 2001) *citing Meade Construction Co. v. Mansfield Commerical Electric, Inc.*, 579 S.W.2d 105 (Ky. 1979).

Caudill admits that he automatically became an SPL Grade 4 technician on April 14, 2002 under the terms of the transfer packet, as he had not obtained another position and had not resigned his employment. He admits that there was no mention in the January, 2002 meeting or in the transfer packet of the payscales or the "top out" point under either company's system. He claims that he raised the question concerning the change to the SPL's payscale at the end of the January meeting, but he did not receive an explanation. Caudill apparently continued working for an additional six months before the purported promise was made upon which his promissory estoppel claim relies. However, Caudill began working at SPL in 1999. He sought out internal transfer

opportunities between 1999 and 2002, but was unsuccessful in obtaining another position. He automatically became an SPL employee in April of 2002 and continued to work despite the fact that he became an SPL Grade 4 under the new structure and despite the fact that he claims he was unsure what this meant for his "top out."

Caudill claims that he detrimentally relied upon a promise made to him in an e-mail in late 2002 or early 2003 from Jeff Virant, formerly of the Technical Solutions Division at ISSC, who replaced Tony Romanus in late 2002.[1] Caudill has not produced the e-mail. He states that his copy was destroyed. The e-mail purportedly stated that "You were correct. [Your grade] has been changed and it should not affect you in the near future." He states that he orally confirmed with Bill O'Bryan, an SPL manager, that the e-mail from Virant was correct and thereafter considered that "the issue was settled." Caudill Depo., p. 176.

Caudill contends that he detrimentally relied on the purported promise from Virant. He states that he remained at SPL after the promise was made. Caudill did continue to work at SPL. However, the court need not draw the unsupported inference that he stayed *in reliance on the purported promise*. As Caudill was already working at SPL since 1999 and continued working after April 14, 2002 as an SPL Grade 4 technician, no reasonable inference can be drawn that he was induced to remain six months later after he received this purported promise. Caudill was asked in his deposition what he would have done had he not gotten the purported promise. He responded "That would be speculative on my part at this juncture." Caudill Depo., p. 176. There is, therefore, no evidence of detrimental reliance by Caudill on the purported promise of Virant.

---

[1] Romanus had been brought in to SPL to manage the merger of the ISSC group into SPL.

Even assuming that Caudill stayed at SPL because it was represented to him that he would be afforded the same "top out" point as under the UPS Co. system, we find that Caudill's promissory estoppel claim is barred by the Kentucky Statute of Frauds, KRS 371.010(7).

The Kentucky Statute of Frauds applies to promissory estoppel claims involving promises not to be performed within one year from the making thereof. *Sawyer v. Mills*, 295 S.W.3d 79, 89-90 (Ky. 2009); *Trim v. Merv Properties, LLC*, 2011 WL 1327589 at *3 (Ky.App. 2011). It is apparent that this was a promise which, if made, was not contemplated to be performed within one year. Caudill was asked in his deposition if, in 2002-2003 he was intending to retire within a year. He replied "No." Caudill Depo., p. 177. Caudill testified that the earliest he can retire is at age fifty-five, and that in 2011 at the time of his deposition, retirement was still fourteen years away. He planned to continue working and UPS expected him to do so. The "top out" would apply, if at all, to merit raises earned at some undetermined time in the future. There is no evidence to the contrary.

Additionally, there is no evidence that the purported promise *could have been* performed within one year. The testimony is undisputed that employees under either the UPS Co. or SPL system were not automatically entitled to pay raises. Merit raises were determined annually and varied in amount. Thus any promise relating to a "top out" of Caudill's wage could not have been satisfied until a merit increase had been earned in a given year. In other words, Caudill contends he was promised that he would "top out" at a point comparable to the "top out" in the UPS Co. system. In fact, Caudill did not "top out" until 2007 under the SPL system. Thus the evidence establishes that not only was a top out *not anticipated* to occur within one year, but that the promise *could not have been performed* within one year of its making. A promise to be performed at a point in the future beyond one year is subject to the Statute of Frauds requirement that the promise be

memorialized in writing and signed by the party charged with performance of the promise. KRS 371.010(7). No writing has been produced.

Caudill contends that a writing did exist but that it was destroyed. The writing, as he describes it, would be insufficient, in any event. A promise must be clear, definite, and unambiguous to be enforceable under a theory of promissory estoppel. *Street v. U.S. Corrugated, Inc.* 2001 WL 304568 at *6 (W.D.Ky. Jan. 25, 2011). The "writing" upon which Caudill relies allegedly stated "You were correct. [Your grade] has been changed and it should not affect you in the near future." The alleged promise is anything but clear, definite, and unambiguous. It is only through Caudill's explanation that the sentence has any discernable meaning. The duration of the alleged promise is unclear and indefinite, as "in the near future" is wholly undefined.

Therefore, we find that no genuine issue of material fact exists and UPS is entitled to judgment as a matter of law. Caudill's claim for promissory estoppel is barred by the Kentucky Statute of Frauds, as the alleged promise was not reduced to writing and signed by the promisor. Further, Caudill has failed to come forward with evidence of a clear, definite, and unambiguous promise which may be enforced. Finally, we conclude that Caudill has failed to come forward with evidence that he detrimentally relied upon the alleged promise by UPS.

For these reasons summary judgment will be granted in favor of UPS by separate order.

August 22, 2012

Charles R. Simpson III, Judge
United States District Court